UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

MICHAEL NOBLE, JR.,                )
                                   )
            Petitioner,            )
                                   )
v.                                 )        Nos.   2:10-CR-51-JRG
                                   )               2:16-CV-38-JRG
UNITED STATES OF AMERICA,          )
                                   )
            Respondent.            )

## <u>**MEMORANDUM OPINION**</u>

On May 11, 2012, a jury convicted Michael Noble, Jr., ("Petitioner") of possession of child

pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B). [Doc. 106].[1]  Petitioner received a

sentence of 120 months' incarceration and twenty years of supervised release. [Doc. 118].  Pending

before the Court are Petitioner's motion to vacate, set aside, or correct a sentence under 28 U.S.C.

§ 2255, [Doc. 147], as well as a motion to amend his pleading. [Doc. 159].  The United States

responded in opposition to Petitioner's § 2255 motion, arguing that none of his claims provide a

basis upon which to grant relief and that the motion should be denied. [Doc. 154].  Petitioner

replied to that response. [Doc. 155].  On November 16, 2017, some seventeen months after the

Government filed its response, Petitioner submitted his motion to amend his § 2255 motion, a

proposed amended § 2255 motion, a memorandum brief, and his supporting affidavit. [Docs. 159,

159-1, 159-2, 159-3].

Under Rule 8 of the Rules Governing § 2255 Proceedings, the Court must determine, based

on a review of the answer and the record, whether an evidentiary hearing is required.  *Pola v.*

*United States*, 778 F.3d 525, 532 (6th Cir. 2015).  A petitioner's burden in this regard is relatively

---

[1]  Citations to the record refer to the Petitioner's criminal case, No. 2:10-CR-51.

light, but more is required than protestations of innocence. *Valentine v. United States*, 488 F.3d 325, 334 (6th Cir. 2007). In this case, the Court can resolve this case on the record without an evidentiary hearing. *Id.* (concluding that a hearing is mandatory in a § 2255 proceeding when a factual dispute arises). Therefore, no evidentiary hearing is necessary.

For the following reasons, Petitioner's motion to amend his § 2255 motion, will be **GRANTED** in part (as to arguments that elaborate on or restate claims asserted in the § 2255 motion), and **DENIED** in part (as to new claims that do not relate back to the original claims in the § 2255 motion); his § 2255 motion will be **DENIED**; and the entire § 2255 case will be **DISMISSED WITH PREJUDICE**.

## I.     MOTION TO AMEND

In Petitioner's motion to amend, he maintains that he is merely clarifying the claims raised in his motion, is not changing the substance of those earlier claims, and is incorporating those earlier claims into his motion to amend. [Doc. 159 at 1]. Prior to the enactment of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), the only time constraint for a federal prisoner to file a § 2255 motion was the prejudice that would ensue if a respondent were required to respond to the motion to vacate due to a delay in filing. *See* Advisory Committee Note to 1976 Adoption to Rule 9, Rules Governing Section 2255 Proceedings. Under the AEDPA, however, a federal prisoner now has one year in which to file a § 2255 motion. *See* 28 U.S.C. § 2255(f). The limitation period runs from one of several events; the pertinent event in this case is "the date on which the judgment of conviction becomes final." 28 U.S.C. § 2255(f)(1).

Petitioner's judgment issued on December 5, 2012, [Doc. 118], and he filed his notice of appeal on December 12, 2012. [Doc. 120]. The Sixth Circuit decided Petitioner's appeal on February 25, 2015, [Doc. 134] and, ninety days later, upon the lapse of the period for petitioning

the Supreme Court for certiorari, *see* Sup. Ct. R. 13.1, Petitioner's conviction became final. *Clay v. United States*, 537 U.S. 522, 525 (2003) (holding that "a judgment of conviction becomes final when the time expires for filing a petition for certiorari contesting the appellate court's affirmation of the conviction"). Thus, Petitioner's conviction became final on May 27, 2015, which means that his § 2255 motion and any proposed amendments would be timely if they were filed on or before May 26, 2016. Because Petitioner filed his § 2255 motion on February 29, 2016, it is timely. Petitioner's motion to amend was filed on October 31, 2017—some one year and five months after the date on which lapsed the one-year limitations statute under § 2255(f)(1).

However, under Rule 15 of the Federal Rules of Civil Procedure, amendments filed after the statute of limitations has expired that "relate back" to the original pleading are allowed under certain circumstances.[2] *Mayle v. Felix*, 545 U.S. 644, 664 (2005) (applying Rule 15(c)(2) to § 2254 petitions); *Howard v. United States*, 533 F.3d 472, 475–76 (6th Cir. 2008) (applying Rule 15(c)(2) to § 2255 motions). Therefore, unless the claims contained in the motion to amend relate back under Federal Rule of Civil Procedure 15(c)(2) to the claims alleged in the timely filed § 2255 motion, the proposed claims are time-barred. The question then is whether the amendments are timely because they relate back to the original filing date.

Whether claims relate back "depends on the existence of a common 'core of operative facts' uniting the original and newly asserted claims." *Mayle*, 545 U.S. at 659 (citation omitted). An amended § 2255 motion will not relate back if it asserts "a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." *Id.* at 650.

---

[2] The Federal Rules of Civil Procedure are applicable to § 2255 motions. *See* Rule 12, Rules Governing Section 2255 Proceedings.

There are four numbered claims in the proposed amended § 2255 motion, and those four claims, for the most part, iterate the claims made in the initial motion, either by doing so outright, by incorporating the timely claims, or by making the same or similar arguments to those that were offered in support of the timely claims.  However, the proposed amended § 2255 contains four additional sub-claims of ineffective assistance:  (1) that counsel abandoned Petitioner's actual innocence defense, in that Petitioner is both factually and legally innocent, [Doc. 159-1 at 4–6]; (2) that counsel did not appropriately question witnesses, [*Id.* at 7]; (3) that counsel did not allow and assist Petitioner to testify, [*Id.*]; and (4) that counsel failed to call Jessica Riley, one of Petitioner's restaurant co-workers with whom Petitioner had an affair, to testify on Petitioner's behalf. [Doc. 159-2 at 13].

No claims similar in type to these four intended claims were raised in the original § 2255 motion. True, the initial motion to vacate alleged claims of ineffective assistance of counsel. Nonetheless, the attorney missteps now alleged (abandonment of actual innocence defense, inadequate questioning of witnesses, failure to allow and assist Petitioner to testify, and failure to call Ms. Riley as a witness) are not similar in type to the asserted attorney shortcomings presented in that pleading.  *See United States v. Ciampi*, 419 F.3d 20, 24 (1st Cir. 2005) (finding that Rule 15 is not satisfied "merely by raising some type of ineffective assistance in the original petition, and then amending the petition to assert another ineffective assistance claim based upon an entirely distinct type of attorney misfeasance").  Because the proposed amended claims do not share "a common core of operative facts" with the claims raised initially, the newly minted claims do not relate back to the timely claims in the motion to vacate.

Therefore, because the statute of limitations expired on May 26, 2016, for Petitioner to file a § 2255 motion and any amendments to that motion and because Petitioner did not file his motion

to amend until October 31, 2017, the four new sub-claims of ineffective assistance are time-barred under subsection § 2255(f)(1).

In view of the foregoing reasoning, Petitioner's motion to amend will be **GRANTED**, in part, as to the restated claims, and will be **DENIED**, in part, as to all other claims.

## II.    MOTION TO VACATE

### A.    Procedural and Factual Background

In a two-count indictment issued by the grand jury on May 11, 2010, Petitioner was charged with receipt of child pornography (count one) and possession of child pornography (count two). [Doc. 1].  On November 5, 2010, Petitioner moved for a psychiatric examination to determine his competency to stand trial and his present mental status. [Doc. 20].  Five days later, the motion was granted. [Doc. 22].  Petitioner was evaluated at the Bureau of Prisons facility at FMC Butner, North Carolina, and the results were reported to the Court. [Doc. 28, sealed].  Following a hearing on the issue, Petitioner was determined to be competent to stand trial. [Doc. 35, sealed].

Petitioner was tried before a jury on May 8–10 of 2012. [Doc. 106].  At the trial, the prosecution presented as a witness Petitioner's wife, Julianne Noble, who testified that on three occasions she had discovered images of children in a desktop computer she shared with her husband, that those children in the images wore little or no clothing, that some were engaged in sexual intercourse with adults, and that she deleted those images on two occasions and warned Petitioner about the images she had seen. [*Id.* at 43, 48–56].  Ms. Noble stated that, when she confronted Petitioner, he attributed the images to a "hacker," *see United States v. Riggs*, 739 F. Supp. 414, 423 (N.D. Ill. 1990) (defining hackers, *inter alia*, as "individuals involved with the unauthorized access of computer systems by various means"). [Doc. at 86–87].

Ms. Noble averred that she again found such images on the desktop, that she again confronted Petitioner about those images, and that at some point Petitioner protected access to the computer with a password that he did not disclose to her. [*Id.* at 87]. Ms. Noble further averred that, on a third occasion, she discovered such images, along with videos, one of which depicted a little boy giving oral sex to an older man. [*Id.* at 54]. She stated that she copied the images to a disc—a disc that is missing—and that she did not delete the images. [*Id.*]. Ms. Noble testified that, the next time she discovered similar images on the computer, the children in the images were naked and were spreading their legs. [*Id.* at 55].

Ms. Noble additionally testified that Petitioner spent a great deal of time on the computer, but she acknowledged during cross-examination that she had never seen him download child pornography. [*Id.* at 52–53, 86]. Ms. Noble said that she later discovered a videotape in Petitioner's jacket pocket and that she removed it and played it. [*Id.* at 56–57]. She said that, among the depictions on the videotape were young girls at various locations—at their houses and swimming pools—and that parts of the videotape recorded "up their skirts" and zoomed in on their "private parts." [*Id.* at 57]. Ms. Noble recounted that she contacted the police about the videotape, [*id.* at 57, 60], and that a patrolman responded initially to the report, followed some ten to fifteen minutes later by a detective and other officers. [*Id.* at 61–62, 111]. Ms. Noble further stated that Petitioner bought her a laptop for Mother's Day of 2009 that disappeared after Petitioner returned from his police interview. [*Id.* at 65–67]. Ms. Noble averred during cross-examination that she had not given a wireless card to the police because she did not have it and that she had never mentioned a wireless card in any of her previous statements because she had "forgotten about it." [*Id.* at 83–84].

Ms. Noble consented to a search of the home. [*Id.* at 62]. Petitioner, who had reached his residence after the arrival of the law enforcement officers, remained outside with a back-up officer. [*Id.* at 60–61]. One of the detectives viewed the videotape with Ms. Noble. [*Id.* at 61–62]. The officers took the videotape, hard drives, and other computer equipment, with Ms. Noble's consent. [*Id.* at 62–63].

Petitioner was taken to the police station for an interview with the detectives investigating the case. [*Id.* at 96–97, 111–12]. According to one detective's trial testimony, Petitioner admitted during the interview that one hard drive that had been taken from his residence contained child pornography, but stated that the hard drive belonged to a friend. [*Id.* at 101–02]. The detective testified that Petitioner said that a friend had the laptop but that his and other law enforcement officials' subsequent efforts to recover the laptop were unsuccessful. [*Id.* at 102–03]. Petitioner denied that he had downloaded any child pornography, but he acknowledged that his wife had told him that she had deleted child pornography from their computer. [*Id.* at 106, 108–09, and 122].

Federal Bureau of Investigation ("FBI") Special Agent David Bishop testified that he had been contacted by the lead detective on Petitioner's case and that he was given hard drives, a computer, digital video discs ("DVDs"), compact discs ("CDs") and thumb drives seized from Petitioner's residence. During his direct testimony, Bishop identified an item that had been seized as a USB wi-fi drive and explained that it could be plugged into any device that contained a USB port to get wi-fi. However, during his cross-examination, Bishop acknowledged that he had been mistaken in identifying the item as a USB wi-fi drive and that the item was not a USB wi-fi drive, but instead was a keyboard adapter.

Reeves Garnett, a cybercrime and computer forensic examiner with the Tennessee Bureau of Investigation ("TBI"), testified that he had examined the seized computer equipment. [Doc. 123

at 28–31]. Garnett stated that his method of forensic image analysis is to use a write blocker to make copies to ensure that the original images are unchanged by anything he does during his examination. Garnett explained that he then performs his forensic image analysis on the copies he has made of the original images. Garnett stated that, during his analysis of the seized computer and hard drives, he found some 2,100 images of child pornography on the desk top computer; 150 images of child pornography on an external hard drive (the 40 gigabyte Maxtor hard drive);[3] and 150 additional images and six videos of child pornography on a second external hard drive (the 6.8 gigabyte Seagate U8 hard drive). [*Id.* at 32–34].[4] Both hard drives, according to Garnett's testimony, had previously been accessed with the seized desktop computer. [*Id.* at 56, 71].

Garnett additionally testified that images on the computer were associated with a password-protected user account and that those images were located in three areas of the computer. [Doc. 45]. Thirty-four of the images were located in the computer's recycle bin. [Doc. 123 at 45]. Garnett explained that the placement of the images in the recycle bin indicated that the images had been marked for deletion but that the images were still there. [*Id.*]. In addition to the images found in the recycle bin, the expert recounted that he also had found images in "unallocated space." [*Id.*]. According to Garnett, the images that had been deleted were shunted to "unallocated space" and those images had not been "overwritten" because the computer system had not needed to use the space to save new information. [*Id.* at 45–46, 89–90].

The third area of the computer containing images of child pornography, according to Garnett, was a section called "orphaned files." [*Id.* at 46]. Garnett described orphaned files as files

---

[3] Garnett testified that, while his initial analysis showed 85 images, a later and more thorough forensic analysis increased that number to 150 images.

[4] Garnett stated that the third hard drive that had been seized, a Maxtor external hard drive, was not operational and could not be examined. [Doc. 123 at 31].

that still existed in the computer system though their parent folders that had been deleted. [*Id.*].

Garnett related that, in the typical case, the computer would not overwrite orphaned files because

the computer does not recognize that the space occupied by orphaned files is available space. [*Id.*

at 46–47].

Garnett further testified that the desktop computer had been accessed last on October 15,

2009—a date nearly two weeks prior to its October 27, 2009 seizure by law enforcement [*Id.* at 48

and 93]. According to Garnett, the names on the files were consistent with names of files that

contain child pornography videos, and the computer's file structure was consistent with someone

deleting folders over a period of several months [*Id.* at 50, 52–53]. Garnett explained that, prior

to the placement of a file in the "recent file list" area of the computer and hard drives, as was the

case with the computer equipment seized from the Noble residence, the user actually had to open

and view the videos before the videos could populate the recent file list [*Id.* at 51]. Garnett said

that the password had been changed on July 15, 2008 [*Id.* at 49].

The forensic examination, so testified Garnett, revealed that the external hard drives

contained no computer viruses but that the desktop contained 13 viruses linked to a specific virus

package called antivirus 2008. [*Id.* at 53–54]. Garnett stated that, in his experience, the antivirus

2008 package has never been used to place child pornography on someone else's computer and

that it would be "unusual" for the package to be used in this way. [*Id.* at 55, 72]. Garnett said that

viruses typically do not save files to the desktop because viruses want to stay hidden and that

viruses typically save to the same folder, whereas some of the files containing child pornography

on Petitioner's computer were saved to the desktop and to various other files. Garnett explained

that, based on files contained in the Windows media play file listing, the images on the external

drives had come from the desktop computer. [*Id.* at 72]. Finally, Garnett testified that all devices had been manufactured outside the State of Tennessee.

Garnett acknowledged, during his cross-examination, that all child pornography had been deleted from the computer and one of the hard drives (the Seagate). The expert further acknowledged that the deleted files could not be recovered without advanced software and that such software was not found on Petitioner's computer. Garnett also testified that he ran a LimeWire[5] search but that he found no evidence to show that child pornography had been downloaded from that site on to the computer. The expert also stated that, in the understanding of a typical user, an orphan file is a completely deleted file, though in fact the file exists for forensic purposes.

The sole defense witness was Richard Chandler, a former police officer with the Kingsport, Tennessee, Police Department, who, at the time of Petitioner's trial, had himself been convicted in a United States District Court in Louisiana for exploitation of a minor, a computer-related offense. [*Id.* at 115–16, 180]. Chandler, who was the first law enforcement officer to respond to Ms. Noble's October 17, 2009 call to the police department, testified regarding his contact with Ms. Noble on that date. Chandler explained that Ms. Noble prepared a written statement on that date, that some things she discussed with him were not included in her statement, and that the statement contained nothing regarding a laptop. [*Id.* at 185–86]. Chandler further testified as to his lack of access to the seized computer and hard drives from that date to January of 2010. [*Id.* at 183–194].

---

[5] "LimeWire, a peer-to-peer file sharing program . . . connect[s] network participants directly and allow[s] them to download files from one another. . . . When a user downloads a file using the LimeWire network, he or she causes a digital copy of a file on another user's computer to be transferred to his or her own computer." *United States v. Flyer*, 633 F.3d 911, 913 (9th Cir. 2011) (all citations omitted).

Based on this evidence, the jury acquitted Petitioner of count one, *i.e.*, receiving child pornography, but convicted him of count two, the lesser-included offense of the knowing possession of child pornography. [Docs. 118 and 124 at 73].

The matter proceeded to sentencing and, after considering the parties' sentencing memoranda, [Docs. 115 and 116], the Court sentenced Petitioner to 120 months' imprisonment—the top of his effective Guidelines range of 108–120 months (as limited by the maximum statutory sentence tied to his offense), to be followed by twenty years of supervised release. [Docs. 117 (minute entry) and 118 (Judgment of December 5, 2012)]. One week after entry of the judgment, Petitioner, who was then represented by a different attorney, filed a notice of appeal. [Doc. 120]. Petitioner then moved to have his appellate counsel relieved of the representation, the motion was granted, and new counsel was appointed. [Docs. 120 and 128]. Petitioner's second appellate counsel was allowed to withdraw and a third appellate attorney was appointed to represent him. [Docs. 130 and 131]. On February 25, 2015, the Sixth Circuit denied Petitioner's two challenges to the admission of the videotape into evidence and to the substantive reasonableness of his sentence, denied his motion to file a pro se brief, and affirmed this Court's judgment. [Doc. 134]. Petitioner did not seek further review in the Supreme Court and, on February 29, 2016, he filed this timely § 2255 motion. [Doc. 147].

## B.    Standards of Review

To obtain relief under 28 U.S.C. § 2255, a petitioner must demonstrate "(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law . . . so fundamental as to render the entire proceeding invalid." *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (quoting *Mallett v. United States*, 334 F.3d 491, 496–97 (6th Cir. 2003)). To warrant relief under 28 U.S.C. § 2255 because of constitutional error, the error must

be one of constitutional magnitude that had a substantial and injurious effect or influence on the proceedings. *Cf. Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (citation omitted); *Jefferson v. United States*, 730 F.3d 537, 549 (6th Cir. 2013) (applying *Brecht* test to § 2255 motion). To warrant relief for a non-constitutional error, a petitioner must show a fundamental defect in the proceeding that resulted in a complete miscarriage of justice or an egregious error that violated due process. *Reed v. Farley*, 512 U.S. 339, 354 (1994); *Riggs v. United States*, 209 F.3d 828, 831 (6th Cir. 2000). A petitioner "must clear a significantly higher hurdle than would exist on direct appeal" to secure collateral relief. *United States v. Frady*, 456 U.S. 152, 166 (1982); *Regalado v. United States*, 334 F.3d 520, 528 (6th Cir. 2003) (citing *Frady*, 456 U.S. at 166).

When a defendant files a § 2255 motion, he must set forth facts which entitle him to relief. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972); *O'Malley v. United States*, 285 F.2d 733, 735 (6th Cir. 1961). "Conclusions, not substantiated by allegations of fact with some probability of verity, are not sufficient to warrant a hearing." *O'Malley*, 285 F.2d at 735 (citations omitted). A motion that merely states general conclusions of law without substantiating allegations with facts is without legal merit. *Loum v. Underwood*, 262 F.2d 866, 867 (6th Cir. 1959); *United States v. Johnson*, 940 F. Supp. 167, 171 (W.D. Tenn. 1996).

Claims other than those of ineffective assistance of counsel are procedurally defaulted if not raised on direct appeal. *Bousley v. United States*, 523 U.S. 614, 621 (1998); *Peveler v. United States*, 269 F.3d 693, 698 (6th Cir. 2001). "In the case where the defendant has failed to assert his claims on direct appeal and thus has procedurally defaulted, in order to raise them in a § 2255 motion he also must show either that (1) he had good cause for his failure to raise such arguments and he would suffer prejudice if unable to proceed, or (2) he is actually innocent." *Regalado v. United States*, 334 F.3d 520, 528 (6th Cir. 2003); *see also Bousley*, 523 U.S. at 622–23. The hurdle

a petitioner faces to overcome a procedural default is "intentionally high . . . for respect for the finality of judgments demands that collateral attack generally not be allowed to do service for an appeal." *Elzy v. United States*, 205 F.3d 882, 884 (6th Cir. 2000). Further, federal inmates are not entitled to relitigate claims that were raised and considered on direct appeal, absent an intervening change in the law, or other such extraordinary circumstance. *Wright v. United States*, 182 F.3d 458, 467 (6th Cir. 1999); *Jones v. United States*, 178 F.3d 790, 796 (6th Cir. 1999).

## C.   Law and Analysis

Petitioner's § 2255 motion asserts two general grounds for relief—ineffective assistance of counsel and prosecutorial misconduct. In the first ground, Petitioner faults counsel for failing to object to jury instructions and the verdict form (Claim 1), to investigate and present witnesses (Claim 2), and to make certain objections and clarifications at sentencing (Claim 3). [Doc. 147 at 4–8, 10–16, and 19–22]. In the second ground, Petitioner asserts that the prosecutor made false representations involving a laptop computer (Claim 4). [*Id.* at 24–25], and, by implication, a wi-fi device. The Court turns first to the ineffective assistance ground.

### 1.   Ineffective Assistance of Counsel

A petitioner alleging ineffective assistance must satisfy the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1987). First, the petitioner must establish, by identifying specific acts or omissions, that counsel's performance was deficient and that counsel did not provide "reasonably effective assistance," *id.*, as measured by "prevailing professional norms." *Rompilla v. Beard*, 545 U.S. 374, 380 (2005). A court must presume that counsel's assistance was effective, and a petitioner bears the burden of showing otherwise. *Mason v. Mitchell*, 320 F.3d 604, 616–17 (6th Cir. 2003); *Wong v. Money*, 142 F.3d 313, 319 (6th Cir. 1998) (instructing reviewing courts to "remember that 'counsel is strongly presumed to have rendered

adequate assistance and made all significant decisions in the exercise of reasonable professional judgment'") (quoting *Strickland*, 466 U.S. at 690); *see also Strickland*, 466 U.S. at 689 (directing that courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that . . . the challenged action might be considered sound . . . strategy" (internal citation omitted)). "[T]he constitutional right at issue here is ultimately the right to a fair trial, not to perfect representation." *Smith v. Mitchell*, 348 F.3d. 177, 201 (6th. Cir 2003) (citing *Strickland*).

Second, a petitioner must demonstrate "a reasonable probability that, but for [counsel's acts or omissions], the result of the proceedings would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome," *id.*, and "requires a substantial, not just conceivable, likelihood of a different result." *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) (citation and internal quotation marks omitted). Yet, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691; *see also Smith v. Robbins*, 528 U.S. 259, 285–86 (2000). Furthermore, if "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *Strickland*, 466 U.S. at 697.

### a. Jury Instructions and Verdict Form

Petitioner asserts that counsel failed to object properly to preliminary jury instructions and a verdict form that were "misleading, confusing, and/or defective." [Doc. 147 at 5]. According to Petitioner, the impermissible part of the instruction on count two read: "did knowingly possess a computer that contains." [*Id.*]. Petitioner contends that the phrasing of this instruction would have led the jury to conclude that it needed only to decide whether he possessed a computer and not

whether he knew that the computer contained child pornography." [*Id.*].  Petitioner argues that counsel's alleged failure to object resulted in the issuance of instructions that allowed the jury to convict him without ever considering all the elements required for his conviction.  Petitioner also argues that the Court failed to make necessary agreed-upon changes to the jury charge and that his attorney failed to object when the jury was given "still misleading and confusing instructions and verdict form on count 2." [*Id.*].

With respect to the changes that the parties agreed upon, Petitioner presents detailed arguments involving the Court's modification of the word "computer" in the preliminary jury instructions to two words (i.e., "any matter") in the final jury instructions.  Petitioner suggests that the final instructions remained unclear and improper, regardless of the agreed-upon change, because the jury did not know exactly what Petitioner had to have transported in interstate commerce to satisfy the dictates of the statute of conviction.  Although Petitioner's argument is hard to follow, the Court interprets it as alleging that the placement of the word "knowingly" before the word "possession" means that "knowingly" modifies possession and does not indicate any knowledge requirement as to the nature of content of the items he possessed.  In an abstruse companion argument, Petitioner maintains the use of the words "any matter" in the final jury instructions would have allowed him to be convicted of knowingly possessing child pornography, without the requisite mens rea for such an offense.  ("Knowingly" *is* the mens rea element for an 18 U.S.C. § 2252A(a)(5)(B) offense.).

To resolve a challenge to jury instructions, the instructions are reviewed "as a whole, in order to determine whether they adequately informed the jury of the relevant considerations and provided a basis in law for aiding the jury in reaching its decision." *United States v. Russell*, 595 F.3d 633, 642 (6th Cir. 2010) (quoting *United States v. Frederick*, 406 F.3d 754, 761 (6th Cir.

15

2005)).  An instruction "may not be judged in artificial isolation, but must be viewed in the context of the overall charge." *Cupp v. Naughten*, 414 U.S. 141, 147 (1973).  Relief will be warranted "only if the instructions, viewed as a whole, were confusing, misleading, or prejudicial." *Russell*, 495 F.3d at 642 (citation and internal quotation marks omitted).

At a jury-out hearing, defense counsel objected to the preliminary jury instructions. [Doc. 122 at 2].  The Court concurred with the defense's position that the part of the instructions on count two that read, "did knowingly possess a computer that contains," made "it a federal crime to knowing possess a computer that contains" child pornography. [*Id.*].  Acknowledging that this instruction was incorrect, the Court indicated that it would change the improper preliminary instruction to charge that Petitioner "knowingly possessed an item containing an image, that it had traveled in interstate commerce, and at the time he possessed it he knew that the item contained child pornography." [*Id.* at 11].  Defense counsel expressed no objection and, in fact, assented to the proposed change. [*Id.*].  As to the mental intent element of count two, the Court stated that it intended to give the standard instruction on "knowingly," and again defense counsel did not object to the proposed instruction. [*Id.* at 12]. The Court thereafter gave the jury the preliminary instructions that it had indicated it would give. [*Id.* at 28].

After the proof closed and the parties gave their closing argument, the Court gave the jury its final instructions.  As noted, Petitioner was charged in count two with violation of 18 U.S.C. § 2252A(a)(5)(B) which makes it a crime to "knowingly possess[ ] . . . any book, magazine, periodical, film, videotape, computer disk, or any other material that contains an image of child pornography."  The jury was told that, to convict on count two, the prosecution had to show beyond a reasonable doubt:

16

> "[F]irst, that the defendant knowingly possessed any matter that contained an image of child pornography as charged; second, that such item of child pornography had been transported in interstate or foreign commerce as charged; and, third, that at the time of such possession the defendant knew that such item constituted or contained child pornography."

[Doc. 124 at 65].

The Court proceeded to define "knowingly," the intent element of the offense alleged in count two, as "voluntarily and intentionally and not because of mistake or accident" [Doc. 124 at 26]. The Court defined all the other terms in the offense as well [Doc. 124 at 60 (interstate commerce), at 60–61 (child pornography), at 65 (instructing that the definitions given earlier in regard to count one also apply to count two), and at 65–67 (possession)].

The Court rejects Petitioner's argument that the position of the word "knowingly" before the word "possessed" indicates that "knowingly" modifies "possessed" and does not indicate any knowledge requirement as to the nature of content of the files he possessed. The Sixth Circuit rebuffed an analogous argument by a defendant convicted of the knowing receipt of child pornography by ruling that "knowingly" applies not only to "receives" and "distributes" but also to the "visual depiction" involved in the proscribed materials. *United States v. Brown*, 25 F.3d 307, 309 (6th Cir. 1994) (determining that "a scienter requirement as to the nature and character" of the prohibited material was inherent in the statute).

The logic employed by *Brown* likewise applies to Petitioner's offense of possession of child pornography. The Court therefore finds that the word, "knowingly," in the jury instructions on count two applies to not only "possession" but also to the nature and character of the illicit materials. Furthermore, as the United States points out in its response [Doc. 154 at 8], the Court instructed the jury that the prosecution had to prove that "the defendant knew that such item constituted or contained child pornography" [Doc. 124 at 65].

It is important to note that the Court did not define "any matter" in its instructions and, indeed, "any matter" is not included in 18 U.S.C. § 2256, the statute that defines the terms used in 18 U.S.C. § 2252A(a)(5)(B), Petitioner's statute of conviction. Nor was such a definition necessary because the jury reasonably would have understood that "the ordinary, commonsense meaning" of the term, "any matter," as included in the jury instruction incorporates images in computer files. *United States v. Vig*, 167 F.3d 443, 447 (8th Cir. 1999) (finding "that the plain common sense meaning of 'other matter' encompasses computer image files") (interpreting 18 U.S.C. § 2252(a)(4)(B))[6]; *see also United States v. Hall*, 142 F.3d 988, 998 (7th Cir. 1998) (concluding that the plain meaning of "other matter" or "materials" contained in § 2252(a)(4)(B) signifies "a prohibition of . . . *anything* containing a visual depiction [constituting child pornography]") (emphasis in original).

Furthermore, with one minor exception, the final instructions given to Petitioner's jury mirror the language of the pattern instructions for an 18 U.S.C. § 2252A(a)(5)(B) offense. *See* Sixth Circuit Pattern Jury Instruction 16.08; *see also United States v. Guy*, 708 F. App'x 249, 262 (6th Cir. 2017) (observing that one factor in determining whether an instruction is misleading or erroneous is whether "jury instructions mirror or track the pattern instructions") (quoting *United States v. Damra,* 621 F.3d 474, 499 (6th Cir. 2010)). The exception, as discussed above, involves the Court's use of the term "any matter"[7] rather than the word "material" as the first element of the offense instructions. *See id.* However, this inconsequential deviation from the pattern instructions makes no difference because a district court is not required to use its circuit's pattern

---

[6] Section 2252(a)(4)(B) is worded similarly to § 2252A(a)(5)(B).

[7] The indictment itself, citing to 18 U.S.C. § 2252A(a)(5)(B), charged that Petitioner "did knowingly possess *any matter* that contained an image of child pornography . . . that had been shipped or transported in interstate or foreign commerce by any means, including computer" [Doc. 1 at 2 (emphasis added)].

jury instructions and because the pattern instructions are not binding and must be tailored "to fit the facts of each case." *United States v. Sherrod*, 33 F.3d 723, 725 (6th Cir. 1994).

The instructions given to Petitioner's jury fit the bill in all respects. Those instructions provided the jury with the law it was to apply in determining whether, under the facts of Petitioner's case, the government proved beyond a reasonable doubt the existence of every element of the offense charged in the indictment. The instructions were clear, comprehensive, and not misleading. Each element, including the intent element, was properly defined for the jury. The instructions "taken as a whole, fairly and adequately submit[ted] the issues and applicable law to the jury." *United States v. Mason*, 126 F. App'x 702, 705 (6th Cir. 2005). Because this Court gave proper legal jury instructions, "there is [no] reasonable likelihood that the jury has applied the challenged instruction in a way" that violates the Constitution. *Estelle v. McGuire*, 502 U.S. 62, 72 (1991).

Petitioner also questions the propriety of the verdict form, repeating the arguments he presented in support of his jury-instructions claim. The verdict form directed the jury to find whether Petitioner was "'guilty' or 'not guilty' of knowingly possessing any matter containing an image of child pornography that had been transported in interstate commerce by any means, including a computer, as charged in Count 2 of the indictment." [Doc. 106 at 2]. Petitioner contends that the wording of the verdict form was misleading and confusing and that it allowed the jury to return a guilty verdict based on the mere possession of an item, without any knowledge as to what the item contained. [Doc. 147 at 7]. The verdict form essentially tracked the indictment and the jury instructions. The Court has determined that the jury instructions were correct and now finds that there was no constitutional defect in the similarly worded verdict form.

A failure to object to instructions or to a verdict form that are not impermissible does not fall outside "the wide range of professionally competent assistance" which the Sixth Amendment requires. *Strickland*, 466 U.S. at 690. Counsel has no duty to object to correct jury instructions and a correct verdict form because to do so would be legally baseless. *See United States v. Martin*, 45 F. App'x 378, 381 (6th Cir. 2002); *Krist v. Foltz*, 804 F.2d 944, 946–47 (6th Cir. 1986). It therefore follows that counsel did not render a deficient performance in this instance. Given that the jury received proper instructions on the § 2252A(a)(5)(B) offense alleged in count two of the indictment and a verdict form that incorporated those correct instructions, there was no prejudice. *Greer v. Mitchell*, 264 F.3d 663, 676 (2001). This claim lacks merit because it fails both prongs of the *Strickland* test.

### b.  Failure to Investigate and Present Witnesses [Doc. 147 at 10–16]

In this claim, Petitioner points to two attorney shortcomings. Petitioner asserts that counsel failed properly "to investigate, review, and/or understand discovery materials" and that counsel likewise failed "to obtain witness testimony in relation to computers and similar devices." [Doc. 147 at 10].

### i.  Discovery

The discovery aspect of the claim centers on Petitioner's contentions that, due to the fact that he was incarcerated when discovery was made available, he has never been able completely to review and investigate all discovery materials and that neither counsel nor the Court furnished Petitioner copies of discovery materials. Petitioner asserts that he has "reason to beleive [sic]" that Garnett testified falsely about the images in the recycle bin and that he "strongly beleive [sic] that the images . . . somehow managed to transform themselves in to child pornography contained in the recycle bin." [Doc. 147 at 12–13]. Petitioner ties these assertions to the fact that he "never

had a copy of [his] discovery materials, only pieces." [*Id.* at 13]. Petitioner also suggests that his attorneys' purported failure to conduct a review of the evidence "allowed the prosecution to misrepresent evidence" and "the jury to deliberate upon false facts." [Doc. 147 at 10, 13]. Had counsel investigated items that were included or obtainable in discovery, so Petitioner surmises, counsel could have presented the jury with a "proper and correct view of the evidence and the jury would have returned a verdict of not guilty on Count two." [Doc. 147 at 16].

Petitioner does not identify the discovery materials that he wished to review and investigate nor does he provide any details as to the contents of those discovery materials. Petitioner does not identify the evidence that was misrepresented by the prosecutor (beyond his speculative musings about the prosecutor's supposed misrepresentation) nor does he connect that allegedly misrepresented evidence to the lack of copies of discovery materials. In short, Petitioner's claim regarding this alleged attorney shortcoming is conclusory. Because a petitioner bears the burden of articulating sufficient facts to state a viable claim for relief under 28 U.S.C. § 2255, Petitioner's conclusory statements regarding counsel's discovery failings do not state a claim cognizable under § 2255. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972).

Even if Petitioner's claim were not conclusory, courts have found that, generally, the Constitution does not obligate an attorney to provide discovery materials to a criminally accused client. *See e.g.*, *Carillo v. United States*, 995 F. Supp. 587, 591 (D.V.I. 1998) ("[T]here is no constitutional duty to share discovery documents with petitioner. Petitioner cites no case law for this proposition, and this court finds none."). This is not to say that counsel does not have a "duty to review and discuss the discovery materials with his client to keep him 'informed of important developments in the course of the prosecution.'" *Hinton v. United States*, 2015 WL 1943261 at *3

(N.D. Ill. Apr. 29, 2015) (quoting *Strickland*, 466 U.S. at 688).  However, Petitioner is not alleging that his attorney failed to keep him abreast of discovery or of the progress of the case.

Moreover, the discovery in this case primarily, if not exclusively, involved child pornographic materials.  As the Sixth Circuit has explained:

> The Adam Walsh Child Protection and Safety Act precludes a defendant from obtaining a copy of child pornography in preparation for trial, and the statute explicitly controls over Rule 16.  18 U.S.C. § 3509(m)(2)(A).  Instead, the government must make material that is otherwise discoverable under Rule 16 'reasonably available to the defendant' by giving him 'ample opportunity' to inspect it before trial. 18 U.S.C. § 3509(m)(2)(A) and (B).

*United States v. Clingman*, 521 F. App'x 386, 391 (6th Cir. 2013).

Petitioner lastly argues that that such discovery was not reasonably available to *him* because he was in pretrial custody when the discovery materials were made available to the defense.  However, Petitioner does not allege that the Government did not provide his counsel or the computer expert who assisted counsel with an ample opportunity to inspect the discovery materials before the trial.[8]  Thus, the Court cannot conclude that discovery was not made "reasonably available" to Petitioner, through his counsel or his computer expert. [Doc. 123 at 59 (Counsel stated:  "There's been a lot of discovery in this case.")].

For the above reasons, Petitioner's assertion that counsel gave him ineffective assistance in connection with discovery lacks merit.

### ii.      Uncalled Witnesses

---

[8]  In his next claim, Petitioner impliedly acknowledges that the expert reviewed discovery materials by alleging that it is unclear whether the expert specifically reviewed devices identified during discovery or the files on devices likewise identified in discovery.

*Strickland* imposes upon an attorney "'the obligation to investigate all witnesses who may have information concerning his or her client's guilt or innocence.'" *Ramonez v. Berghuis*, 490 F.3d 482, 487 (6th Cir. 2007) (quoting *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005)). An attorney must perform a reasonable investigation of witnesses and a failure so to do, where prejudice results, can constitute ineffective assistance. Even so, complaints about uncalled witnesses are disfavored because the presentation of testimonial evidence is a matter of trial strategy. *Coble v Dretke*, 444 F.3d. 345, 350 (5th Cir. 2006). Moreover, "the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or on affidavit; [a] defendant cannot simply state that the testimony would have been favorable, [as] self-serving speculation will not sustain an ineffective assistance claim." *United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991) (footnote omitted). "A defense counsel has no obligation to call or even interview a witness whose testimony would not have exculpated the defendant." *Millender v. Adams*, 376 F.3d 520, 527 (6th Cir. 2004) (quotation marks and citation omitted).

### a)      Computer Expert

Petitioner lists several witnesses that counsel did not call to testify, the first of whom is a computer expert. [Doc. 147 at 10]. Petitioner acknowledges that counsel moved for extra time to prepare for trial and to obtain an expert witness. [*Id*.]. Though conceding that the trial transcript seemingly shows that counsel secured the services of a computer expert,[9] Petitioner nonetheless

---

[9]  Indeed, the trial transcript indicates that the computer expert was present during the trial and that the expert consulted with Petitioner's counsel at various times during that proceeding. [Doc. 123 at 51 (counsel asks the Court for permission for the computer expert to come inside the bar so that counsel could pose questions to him), at 61 (requesting a 20-minute break so that counsel could talk to his "IT guy"), at 74 (explaining to the Court that "Chad Morrison is my IT guy, I keep referring to him as the IT guy" to which the Court responds "I understand IT guy"), at 86 (during testimony regarding a laptop computer, counsel asks the Court for "one second [to] . . .consult briefly with my people"), and at 123 (The IT person speaks on behalf of Petitioner to explain the word "ripped" in computer jargon: "It's a correct term for pulling something off.")].

maintains that it is "unclear" whether the expert actually reviewed or investigated the devices identified in discovery and the files on those devices or whether the expert failed to explain to counsel "the true nature" of these items. [*Id*. at 10, 13]. Petitioner posits that an expert could have testified about certain matters, including the USB device, password-protected access to the computer, and other computer equipment and that the expert could have explained computer-related technical concepts. [*Id*. at 12–15]. It is also "conceivable," Petitioner suggests, that counsel failed to listen to and consult with the expert. [*Id*. at 10].

First, Petitioner's allegations concerning the potential testimony of the computer expert lack sufficient support. Petitioner has presented no independent evidence to show what specific testimony at trial or what advice to his counsel the computer expert might have offered regarding "the true nature of these items," password-protected access, or technical concepts, had the expert been called to testify or how such testimony would have undercut the testimony of the prosecution's computer experts. *See Ashimi*, 932 F.2d at 650; *Sanders v. Trickey*, 875 F.2d 204, 210 (8th Cir. 1989) (a § 2255 movant who offered no witness affidavit or other independent support failed to show prejudice, as required by *Strickland*); *United States v. Gavin*, 77 F. Supp. 3d 525, 532 (S.D. Miss. 2014) (noting that, absent affidavits attesting to what the uncalled witnesses would have testified, speculative testimony presented in a brief is insufficient to show prejudice). After all, Petitioner must "affirmatively prove prejudice." *Strickland*, 466 U.S. at 693; *see also Hall v. Prelesnik*, No. 1:08-CV-14889, 2011 WL 2312188 at *16 (E.D. Mich. June 9, 2011) (finding the presumption of reasonable trial strategy was not overcome where missing witnesses' affidavits contained no information that was not covered by the testifying witnesses).

Furthermore, Petitioner, by his own admission, has no basis in fact for alleging that counsel did not consult or listen to the computer expert or that the computer expert did not review or

investigate the computer or the files. This is so because Petitioner acknowledges that it is "unclear" whether his computer expert performed these tasks and that it is "possible" that counsel did not listen or consult the computer expert. Relief under § 2255 cannot be based on conjecture and speculation. A petitioner seeking redress through a § 2255 motion must set forth facts which entitle him to relief. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972); *O'Malley*, 285 F.2d at 735.

Even if more than speculation supported Petitioner's claim regarding this uncalled expert witness, the claim fails on the merits. Citing to *Samatar v. Clarridge*, 225 F. App'x 366, 372 (6th Cir. 2007), Respondent argues that an attorney's decision as to whether to call a witness typically is a strategic one that, absent a demonstration of prejudice, does not amount to ineffective assistance. Respondent is correct in making that argument, as "[t]he decision to call or not call certain witnesses is exactly the type of strategic decision that the courts expect attorneys to make" since counsel is not compelled "to present each and every witness that is suggested to him." *Boykin v. Webb*, 541 F.3d 638 (6th Cir. 2008) (citations omitted). As the Sixth Circuit has reasoned, the failure to call an expert witness "is unquestionably tactical because such an expert might uncover evidence that further inculpates the defendant." *Samatar*, 225 F. App'x at 372 (internal quotation marks and citation omitted).

Here, the record shows that a computer expert attended trial and conferred with Petitioner's attorneys during those proceedings. It therefore logically follows that Petitioner's attorneys appropriately investigated the use of a computer expert and considered how a computer expert best could assist the defense. Because the computer expert both was present at trial and available to testify and because defense counsel did not call that expert to testify on Petitioner's behalf, the Court concludes, given the presumption of effective assistance, *Strickland*, 466 U.S. at 687–88, that Petitioner's attorneys made a tactical decision not to summon the expert to the stand and to

rely on cross-examination to undercut the prosecution's expert. *See Harrington v. Richter*, 562 U.S. 86, 111 (2011) (noting that "[i]n many instances cross-examination will be sufficient to expose defects in an expert's presentation" and may be "the best strategy . . . to say that there is too much doubt about the State's theory"); *see also Strickland*, 466 U.S. at 690 (holding that reviewing courts must presume that an attorney has exercised reasonable professional judgment in making all significant decisions and that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable"); *Herndon v. United States*, No. 3:10-CV-1997 RNC, 2013 WL 2405511 at *5 (D. Conn. May 31, 2013) (finding no ineffective assistance where counsel made a strategic decision not to call a computer expert to testify, though the expert was present at trial and available to testify).

Furthermore, Petitioner's defense focused on showing that other individuals besides Petitioner could have downloaded child pornography to the desktop computer and the external hard drives and that Petitioner did not "knowingly" possess those images of child pornography. *Harrington*, 562 U.S. at 109 (explaining the "strong presumption that counsel's attention to certain issues to the exclusion of others reflects trial tactics rather than 'sheer neglect'"); *id.* at 111 (observing that, absent a solid defense, "the best strategy" may be to assert a reasonable doubt defense); *United States v. Stahl*, 337 F. App'x 31, 33 (2d Cir. 2009) (finding that counsel's strategic choice to focus on a third party that could have downloaded the images of child pornography, rather than to call a computer expert was not ineffective assistance).

For all these reasons, counsel did not render a deficient performance in failing to call Petitioner's computer expert to the stand.

Nor has Petitioner shown prejudice with respect to the uncalled computer expert. Petitioner maintains that FBI Special Agent Bishop testified that a USB device was a wireless internet device

and that the USB device was admitted into evidence as a wireless internet device. Petitioner further maintains that a computer expert, had counsel called the expert as a defense witness, could have contested Special Agent Bishop's testimony and could have shown that the device was not a wireless internet access device, but merely a USB device. However, the record shows that Agent Bishop, during his cross-examination by Petitioner's attorney, retracted his misidentification of the device in his earlier testimony and correctly identified the item as a keyboard adapter. The failure to call a computer expert for the defense and to rely on cross-examination of Agent Bishop to underscore and then correct the misidentification of the USB device did not result in prejudice and did not constitute ineffective assistance. *Harrington*, 562 U.S. at 111 (finding no ineffective assistance ensued from counsel's failure to consult an expert and present expert testimony where "defense counsel elicited concessions from the [prosecution]'s experts and was able to draw attention to weaknesses in their conclusions").

Petitioner also has a timing argument involving Agent Bishop's testimony. Petitioner faults his counsel for failing to object immediately to the misidentification of the keyboard adapter, and he attributes counsel's tardiness in objecting to Bishop's erroneous identification to the lack of testimony by the computer expert. Petitioner fails to appreciate that, even if counsel had called the computer expert to testify, the expert could not have testified for the defense until the prosecution rested. Counsel's tactical choice to use cross-examination to correct the misidentification, rather than to call a computer expert, provided the promptest way to correct that erroneous testimony.

Petitioner's assertion that a defense computer expert could have contradicted TBI Agent Garnett's testimony as to the forensic analysis he performed on the seized computer equipment fares no better under *Strickland*'s prejudice component. *See Harrington*, 562 U.S. at 111–12 ("In

assessing prejudice under *Strickland*, the question is . . . whether it is 'reasonably likely' the result would have been different," and "[t]he likelihood of a different result must be substantial, not just conceivable.").  This is so because the facts Petitioner provides in support of this claim are either incorrect[10] or lack any specificity as to how a defense computer expert could have discredited Agent Garnett's testimony or as to how computer expert testimony is reasonably likely to have made a difference in the outcome.

Petitioner also maintains that a computer expert could have testified that many images of child pornography found on the computer equipment were duplicates.  Petitioner however fails to show that a computer expert's testimony regarding duplicate images of child pornography would have absolved him from the charge that he knowingly possessed child pornography.  As noted, an attorney need not call a witness to give testimony that will not exculpate a defendant. *Millender*, 376 F.3d at 527.

Furthermore, Agent Garnett testified during his cross-examination by the defense that some of the videos he discovered were duplicates and that they had been counted twice in calculating the number of images of child pornography. [Doc. 123 at 219–20].  There is no reasonable probability of a different outcome had a defense computer expert testified as to the duplicate images because such testimony would have been cumulative to Agent Garnett's testimony as to that fact. *United States v. Harris*, 408 F.3d 186, 191 (5th Cir. 2005) (finding that counsel's failure to call witnesses to elicit cumulative testimony "does not amount to ineffective assistance under

---

[10]  One example of Petitioner's presentation of incorrect supporting facts is his mischaracterization of testimony given by the prosecution's expert that involved a docking station.  Petitioner asserts that the expert testified that the only way that the external hard drives could be connected to the computer is with a docking station, whereas no docking station was discovered in Petitioner's residence.  As Respondent points out, the prosecution's expert testified that a docking station was one method that could be used to connect an external hard drive to a computer [Doc. 123 at 75, 82], but the expert never testified that *Petitioner* connected the hard drives through a docking station [*Id.* at 28–94].

*Strickland*"); *but see Stewart v. Wolfenbarger*, 468 F.3d 338, 359 (6th Cir. 2007) (holding that testimony was not cumulative where it "would have added a great deal of substance and credibility" to an alibi defense (quoting *Washington v. Smith*, 219 F.3d 620, 634 (7th Cir. 2000))). Additionally, images of child pornography found on Petitioner's computer equipment were introduced as evidence during the trial. Thus, the jury had before it those images of child pornography and could assess for itself whether and how many of those images were duplicates.

Another attorney error with respect to the uncalled computer expert, so submits Petitioner, is that the expert could have testified regarding password-protected access to Petitioner's computer. [Doc. 147 at 15]. Petitioner acknowledges that he changed his password, but he insists that he gave the password to his wife within two days to one month later, after he secured his email account. [*Id.*]. Petitioner explains that he is "relatively certain" that he instructed the computer to remember or to store the password and to log on automatically when the computer was turned on. [*Id.*]. Petitioner surmises that the copies Agent Garnett made of Petitioner's computer hard drive and external hard drives might not have revealed this specific information involving the password. [*Id.*]. It is Petitioner's position that a computer expert could have investigated Petitioner's description of events involving the password and, if the investigation showed that Petitioner correctly recalled such events, the expert could have testified about that issue. [*Id.*].

Again, Petitioner's entire claim rests on speculation. The testimony of a computer expert to investigate password protected access to the computer, based merely on Petitioner's conjecture as to what the investigation might have revealed, is insufficient to show prejudice and will not support § 2255 relief. *Harrington*, 562 U.S. at 112 (finding that no prejudice accrued from counsel's failure to present expert serology evidence to "establish nothing more than a theoretical possibility" regarding blood evidence).

Finally, Petitioner maintains that, had the expert failed to correct his testimony misidentifying the keyboard adapter as a wi-fi device, the jury would have had evidence from which to infer that Petitioner "had internet access and was capable of downloading or receiving child pornography." [Doc. 147 at 12]. However, ultimately, the expert rightly identified the item as a keyboard adapter and, more important, Petitioner was found not guilty of the charge of knowingly receiving child pornography. [Doc. 106]. Clearly, there was no prejudice from testimony that is repudiated by the witness who gave it and where that testimony relates only to a charge that does not result in a conviction.

For all the above reasons, the Court finds that Petitioner's claim involving the computer expert is conclusory, speculative and, alternatively, fails both prongs of the *Strickland* test.

### b) Brandon Shipley

According to Petitioner, counsel should have called an individual named Brandon Shipley to testify, but failed so to do. [Doc. 147 at 11, 13]. Petitioner contends that Shipley could have testified as to the provenance of the computer and as to whether Alexander Leinback, a convicted child rapist, had access to the computer before Shipley sold it to Petitioner. [*Id*.]. Petitioner also suggests that Shipley would have been able to testify that, when he sold the computer to Petitioner, no child pornography was on the computer. [*Id*. at 13]. Petitioner maintains that counsel's failure to seek and present testimony by Shipley deprived him of his right to present an adequate defense.

Again, Petitioner has presented no independent evidence to show what specific testimony Shipley would have given. *See Sanders*, 875 F.2d at 210 (no *Strickland* prejudice where a § 2255 movant failed to present an uncalled witness affidavit or other independent support). And once more, as Respondent points out, [Doc. 154 at 10], Petitioner has not explained, much less alleged, how Shipley's supposed testimony would have rebutted the proof that Petitioner knowingly

possessed child pornography. True, an attorney's "failure to call favorable witnesses can amount to ineffective assistance where it results in prejudice to the defense." *Pillette v. Berghuis*, 408 F. App'x 873, 884 (6th Cir. 2010) (citing *Towns*, 395 F.3d at 258–60, for its conclusion that counsel gave ineffective assistance by failing to call a witness who could have created an alternative theory of the case). It is likewise true, as has been pointed out, that counsel is not required to call a witness whose testimony would not have been exculpatory. *See Millender*, 376 F.3d at 527. Such is the case with this uncalled witness.

Additionally, Petitioner's counsel questioned Agent Bishop during cross-examination as to whether he had investigated Shipley for child pornography and he answered negatively. [Doc. 123 at 10–11]. In the closing argument, counsel used Bishop's failure to investigate Shipley to bolster the defense's theory that the prosecution had not adduced proof that eliminated the possibility that someone other than Petitioner possessed the child pornography found on his computer equipment. [Doc. 124 at 31–32]. *Cf. Thomas v. United States*, 596 F. App'x 808, 810 (11th Cir. 2015) (finding no ineffective assistance where counsel argued, in closing, that the victim was not credible, though counsel relied on a prosecution witness's testimony to make that point). Petitioner has not shown that he sustained prejudice from counsel's failure to call Shipley to testify for the defense. Petitioner's failure in this regard is significant because "*Strickland* places the burden on the [petitioner], not the [government], to show a 'reasonable probability' that the result would have been different." *Wong v. Belmontes*, 558 U.S. 15, 27–28 (2009) (quoting *Strickland*, 466 U.S. at 694).

### c) James Baker

Another witness whom counsel did not call on Petitioner's behalf is James Baker, who could have impeached, so argues Petitioner, testimony given by Petitioner's wife. [*Id.* at 11]. As

regards counsel's misstep in failing to call Baker, Petitioner offers nothing beyond his conclusory statement that Baker could have offered testimony to impeach Ms. Noble's testimony. Petitioner does not specify which part of Ms. Noble's testimony Baker could have impeached nor how such impeachment would have affected any aspect of the government's case against him. Accordingly, absent any factual support for this alleged instance of ineffective assistance, Petitioner has failed to show either a deficient performance or prejudice ensuing from counsel's failure to offer testimony from this potential witness.

The Court finds that the assertions regarding these two uncalled witnesses lack merit.

### c. Sentencing Errors

In the first of several alleged attorney-sentencing errors, Petitioner maintains that counsel failed to clarify conclusions in Petitioner's sealed psychological report and to correct this Court's unfounded belief that Petitioner was a pedophile. [Doc 147 at 19]. Petitioner suggests that the sealing and misinterpretation of the report prejudiced the Court to believe wrongly that Petitioner was a pedophile. [*Id*.]. Petitioner charges that counsel allowed the Court's erroneous belief to go unchallenged and that the Court's groundless belief that Petitioner was a pedophile influenced its rulings at sentencing. [*Id*.]. Petitioner maintains that the diagnosis was provisional because he had yet to be convicted when it was issued, that the report advised that, if Petitioner were convicted, he should undergo a psychosexual evaluation, and that this did not occur. [*Id*. at 20]. Petitioner also argues that the Court relied on a "non-illegal home video" to justify imposing a sentence at the top of guidelines and that counsel failed to object to this error as well. [*Id*.].

As noted earlier, the psychological report was produced pursuant to Petitioner's motion for a psychiatric examination under 18 U.S.C. § 4241 to determine his mental capacity. [Doc. 20]. The motion was granted under the authority of §§ 4241 and 4247. [Doc. 24]. The order required

that a report detailing the results of Petitioner's psychiatric examination be filed and that the report contain, *inter alia*, the examiners' opinions as to Petitioner's diagnosis and prognosis. [*Id.* at 3–4]. The report was filed under seal. [Doc. 28]. The examiner concluded that existing data, including Petitioner's charges for receiving and possessing child pornography depicting minor girls during a four-year period, the videotape containing depictions of minor girls in public places that focused on their genital and breast areas, his marital troubles, his problems with the legal system, and his military discharge owing to his federal criminal charges, was consistent with a diagnosis of Pedophilia. [*Id.*].

The report also stated that criteria contained in the Diagnostic and Statistical Manual of Mental Disorders warranted that diagnosis. [*Id.*]. The report cautioned that the diagnosis of Pedophilia was provisional, given that Petitioner had not been convicted of the charges. [*Id.*]. The report recommended that Petitioner receive a psychosexual evaluation to determine the presence of sexually deviant urges and/or behaviors related to prepubescent girls and to assess his suitability for sex offender treatment. [*Id.*].

As the transcript of the sentencing hearing reflects, the Court indicated that it would consider, and that in fact it did consider, Petitioner's diagnosis of Pedophilia and the videotape that it viewed as "strong evidence that he was seeking a hands-on victim" [Doc. 126 at 13–14]. The Court weighed Petitioner's diagnosis and videotape evidence against other proof. [*Id.*]. Thereafter, the Court applied the correct advisory guidelines range, as limited by the statutory maximum, considered the factors under 18 U.S.C. § 3553(a), relied on facts not alleged to be in error, and painstakingly explained how it had arrived at the selected sentence. No more was required of the Court. *Gall v. United States*, 552 U.S. 38, 51 (2007). Indeed, the Sixth Circuit

considered Petitioner's sentence on appeal and held that it was substantively reasonable. [Doc. 136].

Moreover, the Court entertained counsel's arguments against using the diagnosis in fixing Petitioner's sentence. For example, counsel maintained that the testing administered to Petitioner "was skewed," that it was less reliable because it had resulted from a psychiatric evaluation and not a sex offender psychosexual evaluation, and that it, perhaps, was not a real indicator of his future behavior. [Doc. 126 at 21]. The Court also heard counsel's explanation that the videotape of young girls made by Petitioner was in "large part" attributable to Petitioner's substance abuse or that at least his substance abuse was a "contributing factor." [*Id*. at 8–9]. On appeal, counsel challenged the admission of the video evidence and the substantive reasonableness of his sentence, based on the argument that the Court improperly considered Petitioner's "psychiatric diagnosis as a pedophile." [Doc. 134 at 5]. The Sixth Circuit held that the admission of the videotape was proper and that Petitioner's sentence was substantively reasonable.

As the foregoing synopsis shows, counsel fought vigorously against the Court's consideration of the diagnosis of Pedophilia and counsel also raised the issue on appeal. The fact that this Court and the Sixth Circuit rejected those arguments does not mean that Petitioner received ineffective assistance. Indeed, Petitioner is not entitled to a perfect assistance from counsel, only constitutionally acceptable representation. *Harrington*, 562 U.S. at 110 (finding that *Strickland* does not entitle a defendant to "a flawless strategist or tactician," only to a "'reasonably competent attorney'" (quoting *Strickland*, 466 U.S. at 687); *Smith*, 348 F.3d. at 201 ("[T]he constitutional right at issue here is ultimately the right to a fair trial, not to perfect representation." (citing *Strickland*)). Because the record refutes Petitioner's ineffective assistance claim, his claim is groundless.

Counsel's next misstep, as recounted in the § 2255 motion, is that counsel failed to file objections to the guidelines range, permitting every possible enhancement to be applied. [Doc. 147 at 21]. Counsel stated he meant to file something else but that he had overlooked it. [*Id.* at 21]. Petitioner hypothesizes that, had counsel filed objections to the PSR, Petitioner's sentencing range would have been much less than it was, and that such objections would have permitted a lesser sentence than the maximum sentence imposed.[11] Petitioner acknowledges that, while he cannot speculate as to what counsel would have filed, he insists that counsel's mere statement that he intended to file but did not file "something else" constitutes *per se* ineffective assistance and necessarily resulted in an inappropriate sentence. [*Id.* at 22]. This is so, Petitioner contends, because the absence of any objections to the PSR and its calculations automatically fails to provide any reduction to which Petitioner may have been entitled. [*Id.*].

The Sixth Circuit recognizes that counsel's failure to make a meritorious objection to a PSR's guidelines calculation at sentencing "can be grounds for finding deficient performance." *Howard v. United States*, 743 F.3d 459, 464 (6th Cir. 2014) (listing cases); *see also United States v. Stricklin*, 290 F.3d 748, 749 (5th Cir. 2002) (awarding § 2255 relief because counsel "failed to raise crucial objections during sentencing"). It likewise recognizes that prejudice ensues where an attorney fails to raise a valid objection to a PSR which, had the objection been made, might have resulted in a lower sentence. *McPhearson v. United States*, 675 F.3d 553, 563 (6th Cir. 2012) ("An error by counsel at sentencing that amounts to any extra jail time is prejudicial under the Sixth Amendment.") (citing *Glover v. United States*, 531 U.S. 198, 202–04 (2001)); *Arredondo v. United States*, 178 F.3d 778, 784 (6th Cir. 1999) (explaining that attorney error in failing to object

---

[11] The PSR used an offense level of 31 with a sentencing range of 108–135—a range capped by the statutory penalty at a 120-month maximum sentence [PSR ¶ 46].

to drug quantity in PSR which may have increased a petitioner's sentence by as much as eight years "constitutes prejudice sufficient to implicate the *Strickland* framework").

Here, Petitioner offers no details as to the nature of the objection to the PSR that counsel should have made or the precise way counsel's omission amounted to prejudice. *Gregory v. United States*, No. 2:05-cr-64, 2013 WL 5350621 at *5 (E.D. Tenn. Sept. 23, 2013) ("Bare, conclusory allegations, unsupported by facts, cannot establish a constitutional violation."). The assertions that counsel gave ineffective assistance by failing to file whatever he meant to file, as Petitioner implicitly recognizes, are speculative because Petitioner has not identified any error in the PSR to which counsel should have objected and because he hypothesizes that the unidentified objection, had counsel made it, would have lessened his sentence. Collateral relief under § 2255 cannot be based on "nothing more than a theoretical possibility." *Harrington*, 562 U.S. at 112.

Furthermore, as Respondent correctly asserts, counsel was asked at sentencing whether he had any objections to the PSR and he explained that his objection, as contained in the sentencing memorandum, was to the enhancements that increased the guidelines range that were applied in nearly all child pornography cases. Interpreting the substance of Petitioner's argument as a request for a variance rather than a true objection to the PSR, the Court considered Petitioner's sentencing memorandum and his "variance" argument in the issuance of the sentence.

Petitioner bears the burden of showing a deficient performance and prejudice under the *Strickland* test and he has not carried his dual burden in this final claim. Petitioner's last claim regarding prejudicial errors on the part of counsel is speculative, conclusory, and alternatively, lacks merit because the record refutes it.

###    2.    Prosecutorial Misconduct

In support of his second main ground for collateral relief, Petitioner asserts that Ms. Noble gave testimony at trial that a laptop had disappeared and that (by implication) Petitioner had taken it. [Doc. 147 at 24]. Petitioner maintains that, following the dismissal of the jury on the second day of trial, his counsel raised the issue of *Brady*[12] or *Jencks*[13] violations in connection with Ms. Noble's cited testimony. At this point, the prosecutor represented to the Court that Ms. Noble had not provided it with information inconsistent with her statements or testimony. The Court accepted the prosecutor's representation that there was no written or oral statement or *Brady* material that had been withheld from the defense.

Petitioner surmises that the Prosecutor falsely represented that no such statement existed because, in his opening argument, the prosecutor referred to Ms. Noble's impending testimony that Petitioner had a wireless card that he used to pick up a signal to access the Internet. [Doc. 147 at 24–25]. Petitioner speculates that the prosecution would not have known to include Ms. Noble's upcoming "black box" testimony in its opening statement and would not have committed a *Jencks*

---

[12] In *Brady v. Maryland*, 373 U.S. 83 (1963), the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id.* at 87. Evidence is material only where "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Kyles v. Whitley*, 514 U.S. 419, 433–34 (1995) (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)).

[13] In *Jencks v. United States*, 353 U.S. 657 (1957), the Supreme Court ruled that, upon a defendant's motion, the defense is entitled to inspect the prior statements of a government witness and to decide whether to use it at trial to discredit the witness. *Id.* at 668–69. The Jencks Act, 18 U.S.C. § 3511, codified the *Jencks* holding and established that the statement must be produced only after the witness has testified on direct examination. *See* 18 U.S.C. § 3500(a). "The term 'statement' includes any 'transcription ... which is a substantially verbatim recital of an oral statement made by said witness and recorded contemporaneously with the making of such oral statement.' *Id.* at § 3500(e)(2)." *United States v. Brazil*, 395 F. App'x 205, 215 (6th Cir. 2010).

violation, had there not existed at least an oral statement from Ms. Noble. [*Id.* at 25, Doc. 159-2 at 28].

The Court understands that Petitioner is alleging claims of prosecutorial misconduct involving the "little black box," the misidentification of the keyboard adaptor, and the missing laptop computer—all of which are inextricably intertwined. Petitioner maintains that, contrary to the prosecutor's statement, Ms. Noble had given a prior statement about a "little black box" and that *Brady* or *Jencks*[14] required disclosure of such a statement. Similarly, though not straightforwardly articulated, Petitioner contends that Agent Bishop's testimony misidentifying the keyboard adapter as a wi-fi device, as well as Ms. Noble's testimony about the laptop, resulted from some sort of prosecutorial shenanigans that took the form of concealment of evidence and presentation of false testimony. [Doc. 147 at 24-25, Doc. 159-2 at 28-29].

Respondent argues that claims of prosecutorial misconduct are procedurally defaulted if not raised on direct appeal, that Petitioner did not raise his claims on direct appeal and that he, thus, has committed a procedural default of those claims. [Doc. 154 at 13]. Both arguments are correct. Petitioner did not present any issues regarding prosecutorial misconduct in his direct appeal. *See Massaro v. United States*, 538 U.S. 500, 504 (2003) ("[T]he general rule [is] that claims not raised on direct appeal may not be raised on collateral review unless the petitioner shows cause and prejudice.") (citing *United States v. Frady*, 456 U.S. 152, 167-168 (1982), and *Bousley v. United States*, 523 U.S. 614, 621–22 (1998)); *Poulsen v. United States*, 717 F. App'x

---

[14] As recounted by Petitioner, Ms. Noble testified that Petitioner connected his desktop computer to a wi-fi internet signal using a wireless device, which she described as a "little black box." [Doc. 147 at 24]. Ms. Noble further testified that she had not mentioned a wireless internet card in her prior statements and that she had not turned the device over to law enforcement. [Doc. 147 at 24]. Petitioner told counsel that he did not have a wireless device and, after counsel inquired into the matter, Agent Bishop, during counsel's cross-examination, acknowledged that his identification of the so-called "little black box as a wi-fi device was incorrect and that the "little black box" was in fact a keyboard adapter.

509, 517 (6th Cir. 2017) (affirming lower court's finding that prosecutorial misconduct claims had been procedurally defaulted when raised in a § 2255 motion); *Goward v. United States*, 569 F. App'x 408, 411 (6th Cir. 2014) (observing that claims based on prosecutorial misconduct that had not been raised on direct appeal were procedurally defaulted).

Petitioner maintains, as cause for his failure to raise the issues in his direct appeal, that he received ineffective assistance of counsel because his appellate attorney "would not file prosecutorial misconduct." [Doc. 147 at 27]. It is doubtful that this contention denuded of facts is sufficient to invoke a claim of cause. *See* Rule 2(b)(2), Rules Governing Section 2255 Proceedings (requiring a movant to "state the facts supporting each ground"). Even if Petitioner has presented a sufficient claim of cause, an attorney error may constitute cause for a default only if the error amounts to constitutionally ineffective assistance under the two-pronged test enunciated in *Strickland*, or if some objective, external factor impeded counsel's efforts to raise the claim properly. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). "[T]he mere fact that counsel failed to recognize the factual or legal basis for a claim or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default." *Id.* Moreover, attorney ignorance or inadvertence in failing to raise a claim on appeal is not an external impediment that would excuse default; the petitioner himself must bear the risk of such error. *Id.*; *Coleman v. Thompson*, 501 U.S. 722, 753–54 (1991). The Court finds that Petitioner has failed to show cause for his procedural default based on attorney error.

Next, Petitioner maintains, presumably as a claim of cause, that he filed a pro se motion on appeal, seeking permission to raise prosecutorial misconduct issues, but that the Sixth Circuit denied the motion because Petitioner was represented by counsel. [Doc. 159-1 at 14]. However, there is no "constitutional entitlement to submit a pro se appellate brief on direct appeal in addition

to the brief submitted by appointed counsel," *McMeans v. Brigano*, 228 F.3d 674, 684 (6th Cir. 2000), and the Court rejects Petitioner's contention that the circuit court's denial of his pro se motion to present prosecutorial misconduct amounts to cause. *Id.* (rebuffing a petitioner's argument that the state court's decision to strike his pro se brief constitutes "cause" to excuse his procedural default).

Because Petitioner has failed to establish cause for his default, this Court need not determine prejudice. *Strickland*, 466 U.S. at 697. Accordingly, Petitioner's unexcused procedural default of his prosecutorial misconduct claims forecloses collateral review.

Alternatively, even if the prosecutorial misconduct claims have not been procedurally defaulted, they are meritless. "To prevail on his prosecutorial misconduct claims, [Petitioner] must show that the prosecutor's conduct so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Jones v. United States*, No. 17-5404, 2017 WL 8791898 at *5 (6th Cir. Nov. 1, 2017) (internal quotation marks and citations omitted). Petitioner's prosecutorial misconduct claims are constructed on alleged *Brady* violations. To prevail on a *Brady* claim, Petitioner must show: (1) the existence of exculpatory or impeaching evidence favorable to the accused; (2) the suppression of the evidence by the prosecution; and (3) ensuing prejudice to the defense. *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999).

The first episode of asserted misconduct by the prosecutor involves the keyboard adapter, entered as Exhibit 6 at the trial and identified initially by Agent Bishop as a "wireless connectivity card." [Doc. 123 at 5–6]. When Petitioner's counsel raised the issue of the prosecutor's failure to disclose evidence regarding the wi-fi card, the prosecuting attorney responded that Ms. Noble had not provided him with information inconsistent with her testimony [*Id*. at 205–08]. The Court

accepted the prosecutor's representation that no prior oral or written statement existed that had not been turned over to the defense.

The Court went on to make several findings. First, the Court determined that any inconsistency between Ms. Noble's testimony and/or statements were "slight" and "typical" in cases like Petitioner's. [*Id*. at 209]. Second, the Court viewed with skepticism the defense's position that Ms. Noble's testimony had been a surprise since the defense had the opportunity to cross-examine Ms. Noble about any such inconsistencies and to ask for a continuance and since counsel chose neither course of action. Finally, the Court concluded that there was "no *Brady* material period, that's not been turned over." [*Id*.]. The Court declined to find either a *Brady* or a *Jencks* violation. [*Id*.].

Two elements of a *Brady* claim are missing here. The Court determined at trial that there was no *Brady* violation involving Ms. Noble's statements about a laptop computer. The Court so found based on the prosecution's explanation that it had no statements inconsistent with Ms. Noble's testimony on that issue. [*Id*. at 201–19]. Petitioner makes much of the prosecutor's opening statement in which he said that Petitioner had a "wireless card" on Petitioner's computer that he used to pick up a wireless signal at the apartment and to access the Internet. [Doc. 122 at 34]. Yet, opening statements are not evidence and are not tantamount to proof of the existence of evidence. Furthermore, the prosecutor acknowledged that, while he believed at the time that the item was a wireless internet device, subsequent testimony revealed that it was not a wireless internet device, but instead was a keyboard adapter. Indeed, defense counsel characterized the misidentification during its argument to the Court as "the government's mistake . . . on whether that was an internet access card or not because of that issue on the laptop." [Doc. 123 at 146].

The Court sees no reason in this § 2255 proceeding to reach any different conclusion regarding the non-disclosure of a statement involving the laptop or wi-fi card than it reached at trial. Accordingly, Petitioner had not shown the first element of a *Brady* violation, *i.e.*, the existence of exculpatory or impeaching evidence that is favorable to the defense.

Likewise missing is the third element. The third element in a *Brady* claim is satisfied if favorable evidence, either exculpatory or impeaching, "could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Kyles v. Whitley*, 514 U.S. 419, 435 (1995). Here, Agent Bishop, the witness who misidentified the keyboard adapter as a wi-fi device in his direct testimony, acknowledged his mistake during his cross-examination and correctly identified the apparatus as a keyboard adapter. Similarly, Ms. Noble's testimony about the "little black box" and the laptop also was presented at the trial. Therefore, the jury that rendered the verdict had the alleged favorable evidence before it to consider during its deliberations

More significantly, this evidence was relevant to the receipt of child pornography, as charged in count one of the indictment. Because Petitioner was found not guilty of count one, prejudice could not have ensued from any alleged withholding of this evidence. Under these circumstances, it simply cannot be said that any of the cited testimony or evidence "could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict."

Additionally, the Sixth Circuit has held that "*Brady* generally does not apply to delayed disclosure of exculpatory information, but only to a complete failure to disclose" and that a "'[d]elay only violates *Brady* when the delay itself causes prejudice.'" *United States v. Blood*, 435 F.3d 612, 627 (6th Cir. 2006) (quoting *United States v. Bencs*, 28 F.3d 555, 560–61 (6th Cir. 1994)). Indeed, "so long as the defendant is given impeachment material, even exculpatory

impeachment material, in time for use at trial," there is no constitutional violation.  *United States v. Presser*, 844 F.2d 1275, 1283 (6th Cir. 1988).  As noted, the information regarding misidentification of the keyboard adapter was used at trial. [Doc. 123 at 26–27, 146].  Therefore, because the evidence was disclosed to the defense during trial and because the jury knew the "true nature" of the wireless keyboard adapter and all the details involving the laptop before it retired to consider the evidence and render its verdict, there is no reasonable probability of a different result.  *Strickler*, 527 U.S. at 281.

Likewise, the *Jencks* rule is not implicated by Petitioner's allegation that there must have existed, at a minimum, an oral statement from Ms. Noble that was not disclosed to the defense.  [Doc. 147 at 25, Doc. 159-2 at 28].  This is so because *Jencks* requires disclosure of a written statement and not the oral statement posited by Petitioner.  *See Goldberg v. United States*, 425 U.S. 94, 98 (1976) (holding that "a writing prepared by a Government lawyer relating to the subject matter of the testimony of a Government witness that has been 'signed or otherwise adopted or approved' by the Government witness is producible under the *Jencks* Act").

The Court again concludes that there was no *Brady* or *Jencks* violation to begin with.  Thus, the prosecution did not engage in misconduct in connection with the claimed nondisclosure of evidence that would have impeached Ms. Noble's testimony or that would have undermined Agent Bishop's testimony.

## C.    Conclusion

For the reasons discussed in this memorandum opinion, Petitioner's motion to amend [Doc. 159] will be **GRANTED** in part and **DENIED** in part, and his § 2255 motion to vacate [Doc. 147], will be **DENIED** and **DISMISSED**.

## D.    Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals disapproves of the issuance of blanket denials of certificates of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). The district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* at 467. Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000).

A certificate of appealability should issue if petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A petitioner whose claims have been rejected on the merits satisfies the requirements of § 2253(c) by showing that jurists of reason would find the assessment of the claims debatable or wrong. *Slack*, 529 U.S. at 484. Those whose claims have been rejected on a procedural basis must demonstrate that reasonable jurists would debate the correctness of the Court's procedural ruling. *Id.*; *Porterfield v. Bell*, 258 F.3d 484, 485–86 (6th Cir. 2001) Having examined each of Petitioner's claims under the *Slack* standard, the Court finds that reasonable jurists could not find that the dismissal of such claims were debatable or wrong. Therefore, the Court will **DENY** a certificate of appealability.

A separate judgment will enter.

ENTER:

_____
s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE